THE HONORABLE S. KATE VAUGHAN

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEARL THOMAS,

                  Plaintiff,

        v.

AMAZON.COM, INC., AMAZON WEB
SERVICES, INC., and KEITH DURJAVA,
in his individual and professional capacities,

                Defendants.

No. 2:21-cv-00661 SKV

**DEFENDANTS' AMAZON.COM, INC., AMAZON WEB SERVICES, INC., AND KEITH DURJAVA'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6)**

NOTED:  FRIDAY, AUGUST 13, 2021

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661SKV

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.    SUMMARY OF ALLEGATIONS .........................................................................2

III.    LEGAL STANDARD............................................................................................4

IV.    ARGUMENT .........................................................................................................5

    A.    Thomas Cannot State A Discrimination Or Retaliation Claim Under Section 1981 (Counts 1 & 2) ................................................................................6

    B.    Thomas Fails To State A Claim For Discrimination Or Retaliation Under The WLAD (Counts 3 & 4) ..........................................................................10

        1.    Plaintiff Has Not Alleged An Adverse Employment Action To Support Any Discrimination Or Retaliation Claim ..................................11

        2.    Thomas Has Not Pleaded A Claim For Gender Discrimination................13

V.    CONCLUSION....................................................................................................13

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

i

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akmal v. Glob. Scholar*,
  2015 WL 5944306 (W.D. Wash. Oct. 9, 2015) ....................................................12

*Allison v. Hous. Auth. of City of Seattle*,
  821 P.2d 34 (1991) (en banc)........................................................................11

*Alonso v. Qwest Communications Co., LLC*,
  178 Wash. App. 734 (2013) ........................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................4, 5

*B.L. by & through Landdeck v. Tonasket Sch. Dist.*,
  2018 WL 2670031 (E.D. Wash. June 4, 2018)....................................................13

*Bastidas v. Good Samaritan Hospital L.P.*,
  2014 WL 6900051 (N.D. Cal. Dec. 8, 2014) ......................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................5, 8

*Beyer v. County of Nassau*,
  524 F.3d 160 (2d Cir. 2008)..........................................................................9

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .......................................................................10

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000) .....................................................................10, 12

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998)...................................................................................6

*Burlington Indus., Inc. v. Ellerth*,
  542 U.S. 742 (1998)..................................................................................11

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)................................................................................9, 12

*Chuang v. Univ. of Cal. Davis, Bd. of Trustees*,
  225 F.3d 1115 (9th Cir. 2000) ........................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Cole v. Illinois*,
    562 F.3d 812 (7th Cir. 2009) ...................................................................................7

*Comcast Corp. v. Nat'l. Assn. of Afr. Am. Owned Media*,
    140 S. Ct. 1009 (2020) ............................................................................................6

*Cozzi v. Cty. of Marin*,
    787 F. Supp. 2d 1047 (N.D. Cal. 2011) ...................................................................7

*Del Castillo v. Washington, Dep't of Soc. & Health Servs.*,
    2007 WL 2713035 (W.D. Wash. Sept. 14, 2007), *aff'd sub nom.* 304 F. App'x 607 (9th Cir.
    2008) .........................................................................................................................9

*Ellorin v. Applied Finishing, Inc.*,
    996 F. Supp. 2d 1070 (W.D. Wash. 2014).............................................................11

*Gorman v. Covidien, LLC*,
    146 F. Supp. 3d 509 (S.D.N.Y. 2015)......................................................................8

*Hotchkiss v. CSK Auto Inc.*,
    918 F. Supp. 2d 1108 (E.D. Wash. 2013)...............................................................12

*Kortan v. California Youth Authority*,
    217 F.3d 1104 (9th Cir. 2000) ..........................................................................11, 12

*Lassair v. Wilkie*,
    2019 WL 5212959 (W.D. Wash. Oct. 16, 2019) ......................................................8

*Marchioli v. Pre-employ.com, Inc.*,
    2017 WL 8186761 (C.D. Cal. June 30, 2017) ..........................................................4

*Moussouris v. Microsoft Corp.*,
    2016 WL 4472930 (W.D. Wash. Mar. 7, 2016) .....................................................13

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ....................................................................................4

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ..................................................................................5

*Westendorf v. W. Coast Contractors of Nev., Inc.*,
    712 F.3d 417 (9th Cir. 2013) ...........................................................................6, 11

*Wiley v. Microsoft Corp.*,
    2014 WL 953841 (Wash. App. 2014).........................................................2, 8, 12, 13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Williams v. Tucson Unified Sch. Dist.*,
   316 F. App'x 563 (9th Cir. 2008) ............................................................................9

*Woods v. Washington*,
   2011 WL 197587 (W.D. Wash. Jan. 19, 2011), *aff'd*, 475 F. App'x 111 (9th Cir. 2012).........7

**STATUTES**

42 U.S.C. § 1981 ..................................................................................... *passim*

Wash. Rev. Code § 49.60.010, *et seq.* ................................................................ *passim*

**RULES**

Federal Rule of Civil Procedure 8 ...........................................................................4

Federal Rule of Civil Procedure 12 .........................................................................5

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

iv

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone: 212.351.4000

1

2                                 **I.    INTRODUCTION**

3          Plaintiff Pearl Thomas' Complaint falls far short of pleading a viable claim for

4    discrimination or retaliation.  Each of these causes of action—whether based on federal or state

5    anti-discrimination laws—suffers from a critical pleading defect that Thomas cannot cure:  *she has*

6    *not suffered an adverse employment action that was taken because of her race or gender*.  Her

7    defective claims should be dismissed with prejudice as a result.

8          To this day, Thomas continues to be employed by AWS as a Human Resources Partner

9    and, as she states in her complaint, in the one year that she has worked for AWS, her compensation

10   has increased, not decreased, and she has received some positive feedback about her performance.

11   She has failed to allege any adverse employment action, because she has suffered none.

12         The only thing Thomas' Complaint points to is that during her tenure she has shown a

13   variety of areas where she can improve her skills and, as a result, was placed in "Focus"—a

14   management tool that allows an employee's manager to "focus" on areas where the employee

15   could use additional guidance and support in order to develop and become successful in their job.

16   In Thomas' mind, the fact that she receives performance feedback and that her manager uses the

17   Focus tool to assist with that is somehow discriminatory and retaliatory.  But not only did Thomas'

18   race (and gender) have *nothing* to do with her entry into Focus, her Complaint does not plead any

19   factual basis for her bare conclusion that Focus affects the terms and conditions of her employment,

20   because it does not.  As Thomas' own allegations show, Focus has no impact on her compensation,

21   her current title or responsibilities, or her benefits—it is a tool to aid in her development.  All

22   Thomas can point to is that she *fears* that AWS will ultimately terminate her employment, fail to

23   promote her, or fail to transfer her to a hypothetical new role, even though none of those things

24   have happened or been threatened.  This is hardly sufficient.  Absent an actual adverse employment

25   action, Thomas' claims for discrimination and retaliation under Section 1981 and the Washington

26   Law Against Discrimination ("WLAD") are incurably defective.

27

28   DEFENDANTS' MOTION TO DISMISS            1            GIBSON, DUNN & CRUTCHER LLP
     PLAINTIFF'S COMPLAINT                                          200 Park Avenue
     CASE NO. 2:21-cv-00661                              New York, NY 10166-0193
                                                          Telephone:  212.351.4000

Thomas' claim for gender discrimination under the WLAD is also independently flawed because Thomas fails to plead sufficient allegations in support of her claim. Thomas' *performance*, and not her status in any protected class, led her manager to utilize Focus to aid in developing Thomas' skills. With respect to gender, Thomas' Complaint only alleges a single stray remark by an unidentified individual, with no alleged decision making authority over Thomas' employment. Even accepting Thomas' allegations as true, as Defendants must for this Motion only, they fall woefully short of pleading any discriminatory animus or connection between Thomas' gender and her purported mistreatment.

Thomas' subjective feelings of mistreatment are not enough to give rise to an actionable claim. *See Wiley v. Microsoft Corp.*, 2014 WL 953841, at *4 (Wash. App. 2014). Without fundamental allegations that she suffered an actionable adverse employment action due to her race or gender—based in facts, not speculation or conjecture about the future—Thomas has not stated a claim for discrimination or retaliation under either Section 1981 or the WLAD and these claims should be dismissed with prejudice.

## II.    SUMMARY OF ALLEGATIONS

Plaintiff Pearl Thomas is a Black woman who joined Amazon Web Services ("AWS") in June 2020 as a Human Resources Business Partner. Compl. ¶ 32. AWS provides IT infrastructure services to businesses in the form of web services, which are commonly known as cloud computing. Thomas began working in the Serverless Application Model ("SAM") team and the Internet of Things ("IoT") group within AWS. *Id.* ¶¶ 12, 46. Over the course of the next six months, Thomas' role and manager changed twice. *Id.* ¶¶ 5, 10. Ultimately, Thomas became a Human Resources Partner on the "Builder Experience Team" ("BeXT"), where she supports managers and employees who work in AWS's Machine Learning group. *Id.* ¶¶ 10, 12. As part of that transition to the BeXT team, Thomas began reporting to Keith DurJava, a Human Resources Manager, effective January 5, 2021. *Id.* ¶¶ 10, 47.[1]

---

[1] Thomas alleges that she was transferred to BeXT, and DurJava's team, on January 5, 2021, which is accurate. *Id.* ¶¶ 10, 47. However, she goes on to allege that her reporting function was to remain the same until April 5, 2021. *Id.* ¶ 47. This is false and contradicted by Thomas' other (accurate) allegations regarding her time working with DurJava before filing this action

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

2

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000

During Thomas' tenure, she contends she has been subjected to pervasive unlawful discrimination and retaliation by AWS and, specifically, DurJava.[2]  According to Thomas, the discriminatory treatment began when Thomas was working with Steph Downey, a Senior Human Resources Business Partner, from February to April 2021.  Downey was not and has never been Thomas' manager, and was only partnering with Thomas to ensure that appropriate Human Resources coverage was provided to IoT, the AWS business group that Downey supports.  Thomas alleges that Downey was condescending and conducted herself in a racially charged manner, but offers no specific examples of any racially motivated conduct by Downey in her nearly thirty-page Complaint.[3]  Thomas alleges that she "complained to Mr. DurJava about Ms. Downey's offensive conduct and disparate treatment"—without providing specific details of such alleged conduct— which DurJava immediately reported, consistent with AWS's policies, to the "HR4HR" group, which provides independent Human Resources support for Human Resources personnel.  *Id.* ¶¶ 53, 58, 59.  Although Thomas disclaimed that she was making a complaint against Downey, the concerns she raised to DurJava were fully investigated by Aarean Wooten, a Black female Human Resources Generalist within HR4HR, and none of Thomas' allegations were substantiated.  *See id.* ¶ 84.

Despite DurJava's support for Thomas in escalating these concerns, Thomas claims that she allegedly "faced hostility, hate, and retaliatory fury" from DurJava because she made her concerns known to him.  *Id.* ¶¶ 9, 10, 11.  Thomas goes so far as to suggest that DurJava used a racial slur in reference to her at the end of a work-related conference call, which she purportedly escalated to Wooten who (despite being a Black woman herself) dismissed it.  *Id.* ¶¶ 13, 73.[4]  She

---

as beginning in January 2021.  *Id.* ¶ 98 (noting that as of April 2021, she had worked with DurJava for three months, i.e., in January 2021).

[2]  Defendants accept Thomas' factual allegations as true for purposes of this Motion to Dismiss, as they must, and for no other purposes.  Additionally, where contradicted by her own allegations, Defendants are not bound to treat Thomas' allegations as true.

[3]  Thomas alleges some examples of conduct she contends was racially motivated or insensitive, but none that pertain to Downey specifically.  *Id.* ¶¶ 44, 45, 50, 55.

[4]  Defendants *unequivocally* deny that DurJava made any such comment or that Thomas told Wooten about that comment.  DurJava, an HR professional, would never use such offensive language and Amazon does not tolerate such language in its workplace.  Had Thomas escalated such a complaint to Wooten, AWS would have promptly and thoroughly investigated (as it did

also contends that DurJava retaliated against her for raising concerns about Downey, which manifested in DurJava placing her in "Focus"—AWS's performance management tool for employees who would benefit from additional work support to improve their job performance— on April 15, 2021. *Id.* ¶¶ 12, 95, 102. Thomas alleges that Focus is akin to a "performance improvement plan," even though Thomas as an HR employee is aware that Amazon's "performance improvement plan" program is entirely separate and different from Focus. *Id.* ¶¶ 95, 99. As a result of her placement in Focus, Thomas alleges that she is "effectively prohibit[ed]" from transferring out of BeXT—meaning that she needs an additional layer of approval, aside from just her manager, for a job transfer (*id.* ¶¶ 95–96). Thomas allegedly fears, without supporting facts, that this will also affect her long-term career goals and is part of an effort to push her out of the company. *Id.* ¶¶ 95, 99, 131.

On May 19, 2021, Thomas filed a complaint before this Court asserting four causes of action: (1) race, color, and ethnicity discrimination and harassment in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); (2) retaliation in violation of Section 1981; (3) race, color, and sex/gender discrimination and harassment in violation of the Washington Law Against Discrimination, Wash. Rev. Code § 49.60.010, *et seq.* (the "WLAD"); and (4) retaliation in violation of the WLAD. *Id.* ¶¶ 125–42. Defendants Amazon.com, Inc., AWS, and DurJava waived service of the Complaint on May 21, 2021. Dkt. 7.

## III.    LEGAL STANDARD

To state a claim for relief under Federal Rule of Civil Procedure 8, a complaint must plead facts which "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

---

once Thomas raised the allegation in passing to a member of Amazon's Disability and Leave Services team on April 26, 2021). While not relevant to the Court's determination of this Motion, the implausibility of Thomas' allegation can be seen in the Complaint itself. Thomas claims, on the one hand, that DurJava made the racial slur after he had thought that Thomas had hung up from the call, when she had not yet done so. *Id.* ¶ 13. Yet, Thomas also concedes that she "did immediately hang up" once the conversation was over, and therefore could not have lingered on the line long enough for DurJava to say such a slur under his breath as she suggests. *Id.* ¶ 65; *see also Marchioli v. Pre-employ.com, Inc.*, No. CV171566JGBDTBX, 2017 WL 8186761, at *19 (C.D. Cal. June 30, 2017) ("Contradictory allegations [] are inherently implausible, and would not survive a motion to dismiss."); *Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) ("[Plaintiff's] overcharge theory is thus implausible in the face of contradictory market facts alleged in her complaint.").

4

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts follow a two-step approach to assess whether a pleading meets the plausibility standard.  To start, all conclusory statements and allegations must be pared from the complaint.  *Twombly*, 550 U.S. at 555.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678; *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) (courts "need not accept as true any 'legal conclusions merely because they are cast in the form of factual allegations'").  As a result, "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements" are insufficient to survive a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678.

After paring all conclusory allegations from the complaint, courts review the complaint's remaining contents to determine whether they "plausibly" entitle a plaintiff to relief.  For a claim to be "plausible," it is not enough that the facts alleged are "'merely consistent with' a defendant's liability," or that a violation is "conceivable"—the plaintiff must plead facts that "*show*" she is entitled to relief.  *Id.* at 678–80 (internal citations omitted, emphasis added).

## IV.    ARGUMENT

Thomas' Complaint is based on speculation, conclusions, and irrelevant contentions which, taken together, fail to state a plausible claim for relief for discrimination or retaliation.  First, Thomas fails to plead facts supporting her bare conclusion that she was subjected to an adverse employment action which could give rise to a discrimination or retaliation claim under Section 1981.  Second, Thomas fails at multiple junctures to state a viable claim under the WLAD.  Again, she has not pleaded an adverse employment action, and she also fails to plead any facts supporting her contention that she was discriminated against based on her gender.  These defects are not curable, as Thomas has not suffered any adverse employment action during her short tenure with AWS, nor has she been subjected to any discrimination, let alone based on her gender.  Her deficient claims should be dismissed without leave to amend.[5]

---

[5]  Thomas also brings harassment claims under Section 1981 and the WLAD.  She states these claims as part of her first and third causes of action for discrimination, rather than as separate causes of action.  At this time, Defendants do not move to dismiss Thomas' harassment theories although they do unequivocally deny that they have any merit whatsoever.  Defendants reserve the right to seek dismissal of these claims in the future.

A.    **Thomas Cannot State A Discrimination Or Retaliation Claim Under Section 1981 (Counts 1 & 2)**

Thomas pleads claims arising under Section 1981 for (1) discrimination based on her race, color, and ethnicity, and (2) retaliation for reporting concerns that she was being discriminated against. Neither claim is supported by sufficient factual allegations to plausibly state a claim for relief, however, because Thomas has not alleged (and cannot allege) a critical element of each claim—that she suffered an adverse employment action. As a result of these defects, she cannot bring these claims under Section 1981 and they should be dismissed with prejudice.

Both Thomas' discrimination and retaliation claims require her to plead that she suffered an adverse employment action. To state a discrimination claim, Thomas "must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right" (*Comcast Corp. v. Nat'l. Assn. of Afr. Am. Owned Media*, 140 S. Ct. 1009, 1019 (2020)), including that she suffered an adverse employment action that "*materially affect[s]* the compensation, terms, conditions, or privileges of [her] employment" (*Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) (emphasis added)). Similarly, to plead a prima facie case of retaliation, Thomas needs specific facts demonstrating that she "engaged in protected activity, that [she] suffered a *materially adverse action*, and that there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (emphasis added). What constitutes an adverse employment action is dependent on the theory, because each type of claim attempts to redress a different type of harm. For each theory, however, Thomas' Complaint points to only one allegedly discriminatory and retaliatory employment action: Thomas' placement in Focus. Under either test, Thomas' allegations fall short of pleading a viable claim.

***Discrimination***. As the Supreme Court has explained, not every employment action will constitute an adverse employment action sufficient to support a discrimination claim as "[a] tangible employment action constitutes a *significant change* in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

6

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000

(1998) (emphasis added) (surveying Courts of Appeals decisions across "race, age, and national origin discrimination, as well as sex discrimination").

Thomas' status in Focus falls far short of meeting this bar. As a member of AWS's HR team, Thomas is "personally aware" that Focus is a performance management tool that allows a manager to *focus* on an employee's performance and coaching in order to help them improve in key areas. Compl. ¶ 93. Even if an employee's manager is using the Focus tool, any "formal counseling" that comes out of that does not amount to an adverse action sufficient to support a discrimination claim. *Woods v. Washington*, 2011 WL 197587, at *8 (W.D. Wash. Jan. 19, 2011), *aff'd*, 475 F. App'x 111 (9th Cir. 2012). In *Woods*, the plaintiff claimed that he suffered from race discrimination under Section 1981 based on a supposed failure to promote him and negative performance counseling. *Id.* at *6. Although the case was decided at summary judgment, the court noted that because facts to support the failure to promote theory were not in the complaint, "an essential element of his claim of disparate treatment [was] lacking" from his pleading and "[t]he remaining allegations he makes that he received a 'formal counseling' . . . [did] not amount to adverse employment actions." *Id.* Likewise, Thomas' allegation that she was given formal performance counseling by virtue of being placed in Focus is insufficient on its face to state a claim under Section 1981.

Even if Focus did amount to a "performance improvement plan," as Thomas misleadingly suggests (Compl. ¶ 99), that alone does not transform it into an adverse employment action. To rise to that level, Thomas would need to plead specific facts showing that being in Focus "materially affected the terms and conditions of [her] employment." *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011); *see also Cole v. Illinois*, 562 F.3d 812, 818 (7th Cir. 2009) ("[T]he performance improvement plan was not a materially adverse action because Cole suffered no reduction in responsibility, pay, hours, or any other benefit, and it did not impose a material change in her employment duties."). She has failed to do so here.

*First*, Thomas does not allege that she suffered any change in compensation or benefits as a result of being in Focus. To the contrary, Thomas alleges that she received a pay *increase* in April 2021 after being placed in Focus and makes no allegation that her increase was reversed or

altered in any way.  Compl. ¶ 122.  Even if Focus was an improvement plan (which it is not), because it "d[id] not impact [Thomas'] compensation"—and her compensation instead went up—it is "not [an] adverse action."  *Lassair v. Wilkie*, 2019 WL 5212959, at *4 (W.D. Wash. Oct. 16, 2019).

*Second*, Thomas does not allege that being in Focus has reduced her responsibilities or available work hours.  The only allegation that Thomas makes regarding a change in her duties relates to her move from supporting SAM and IoT to operating as an HR Partner within the BeXT team, which happened months before her placement in Focus.  *See* Compl. ¶ 120 (alleging a change in role upon moving to the BeXT team, prior to being in Focus).  To the extent Thomas attempts to suggest that she has to operate with closer supervision or more scrutiny because she is in Focus, that too is insufficient to show a change in the terms and conditions of employment.  *See Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 524–25 (S.D.N.Y. 2015) (granting employer's motion for summary judgment where performance improvement plan did not substantially change the employee's responsibilities other than less flexibility coupled with more supervision).

*Third*, Thomas cites no facts to support her bald conclusion that Focus affects "promotion, among other terms and conditions of employment."  Compl. ¶ 95.  Thomas does not allege that she applied for or was being considered for a promotion which she was denied because she is in Focus.  Her allegation that her future prospects may be limited is nothing more than rank speculation and fear that she is "being pushed out of the company."  *Id.* ¶ 119.  But "an employee's fear of losing his or her job in the future is not a materially adverse change in employment."  *Wiley*, 2014 WL 953841, at *4.  In addition, Thomas alleges that she received a *positive* performance review (Compl. ¶ 122), which further demonstrated that being in Focus is not a formal improvement plan or any guarantee of termination.

*Finally*, Thomas' suggestion that Focus may make it more challenging for her to hypothetically transfer jobs in the future, because it will require Vice President approval, also falls far short of showing an adverse action.  *Id.* ¶ 95.  Again, Thomas' fears regarding what may happen if and when she attempts to transfer to a hypothetical new role is far from the type of "[f]actual allegations [necessary] to raise a right to relief above the speculative level."  *Twombly*, 550 U.S.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

8

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000

at 555.  Thomas does not allege that she tried to transfer to a new position and had that request denied, or even that she was told a future transfer request would be denied.  Even if she had, that would merely reflect a "continuation of the status quo" (i.e., Thomas maintaining the same position at Amazon) rather than an adverse action against her.  *Del Castillo v. Washington, Dep't of Soc. & Health Servs.*, 2007 WL 2713035, at *8 (W.D. Wash. Sept. 14, 2007), *aff'd sub nom.* 304 F. App'x 607 (9th Cir. 2008).  Thomas' concern that one additional layer of approval may have a theoretical impact on her ability to transfer in the future is simply void of any "objective indicia of material disadvantage" that would make her placement in Focus actionable under Section 1981.  *Beyer v. County of Nassau*, 524 F.3d 160, 163–64 (2d Cir. 2008) (for "[a] denial of a transfer [to] constitute an adverse employment action" there must be an objective material disadvantage, not just "'subjective, personal disappointment'").

Accordingly, Thomas' allegations are not sufficient to show that she suffered an adverse action that materially impacted the terms and conditions of her employment, and her discrimination claim fails as a result.

***Retaliation.***  Similarly, Thomas cannot plausibly suggest that her placement in Focus was the type of action that would "dissuad[e] a reasonable worker from making or supporting a charge of discrimination" in order to support a retaliation claim.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation omitted); *see Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008) ("Retaliation claims under Title VII and § 1981 share identical legal standards.").  Although the "reasonable worker" standard is an objective one, it is also context-specific and takes into account the particular circumstances of the employee.  *Id.* at 69.

Here, a reasonable HR professional within AWS would understand that Focus is simply formal performance development, and not a rigid performance improvement plan, demotion, or sign that she is being "pushed out" of the company.  Compl. ¶ 119.  In fact, there is an entirely separate process for delivering performance improvement plans—Pivot.  *See id.* ¶ 93 (identifying "Pivot" as a part of the performance management process).  Focus is not "sufficiently final to constitute an adverse employment action" since employees can move in and out without any

impact on their standing, compensation, or duties. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). For instance, in *Bastidas v. Good Samaritan Hospital L.P.*, 2014 WL 6900051 (N.D. Cal. Dec. 8, 2014), the court granted the defendant's motion to dismiss a retaliation claim under Section 1981 premised on a Black doctor's allegation that the hospital he worked for threatened to remove him from a clinical trial program. *Id.* at *4. The court concluded that this action was not sufficiently adverse enough to meet the lower bar for a retaliation claim because it "lack[ed] the requisite finality" to reasonably deter an employee from engaging in protected activity. *Id.* Thomas' status in Focus is likewise temporary—she may come out of it without any job impact—and therefore is not final enough to deter a reasonable employee from making a complaint. Additionally, even looking at Thomas specifically, her placement in Focus did not dissuade her from making complaints to the company—she continued to do so, even after learning she was in Focus. *Id.* at ¶ 102 (alleging that she told HR4HR on April 16, 2021 that "[a]s a result of the investigation I have now been placed in FOCUS").

Accordingly, Thomas has failed to state a viable claim of discrimination or retaliation for relief under Section 1981 and, because she has not suffered any purportedly adverse action beyond her placement in Focus, she cannot salvage these claims through amendment. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (leave to amend should be liberally granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts").

**B.    Thomas Fails To State A Claim For Discrimination Or Retaliation Under The WLAD (Counts 3 & 4)**

In addition to her claims under Section 1981, Thomas pleads the same defective theories—discrimination and retaliation—under the WLAD. The only real difference in her claims it that Thomas also alleges that her *gender* was a cause of her alleged mistreatment under Washington law. As with her Section 1981 claims, each WLAD claim is deficient because Thomas has not alleged (and cannot allege) that she suffered an adverse employment action. Additionally, Thomas' Complaint fails to set forth facts to support her suggestion that her wrongful treatment was caused by her gender.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

10

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone: 212.351.4000

1      **1.      Plaintiff Has Not Alleged An Adverse Employment Action To Support Any**

2      **Discrimination Or Retaliation Claim**

3      To adequately plead a discrimination claim under the WLAD, Thomas must show that: (1)

4      the employer acted with a discriminatory motive, and (2) the discriminatory motivation was a

5      significant or substantial factor in an employment decision. *Alonso v. Qwest Communications Co.,*

6      *LLC*, 178 Wash. App. 734, 746 (2013). This requires that Thomas plead that she suffered an

7      adverse employment action that "includes a *significant change* in employment status, such as

8      'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

9      decision causing a significant change in benefits.'" *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp.

10     2d 1070, 1093 (W.D. Wash. 2014) (emphasis added) (citing *Burlington Indus., Inc. v. Ellerth*, 542

11     U.S. 742, 761 (1998)). Thomas' retaliation claim must likewise plead that she suffered a

12     "materially adverse action" which was the result of Thomas' engagement in a protected activity.

13     *Westendorf*, 712 F.3d at 422; *see also Allison v. Hous. Auth. of City of Seattle*, 821 P.2d 34, 37

14     (1991) (en banc) ("substantial factor" causation required for WLAD retaliation claims). The

15     respective standards for these "adverse employment actions" are the same as they are under Section

16     1981, which borrows from Title VII jurisprudence. *See Alonso*, 178 Wash. App. at 744 n.11

17     (noting that case law interpreting Title VII is instructive in WLAD cases because the WLAD is

18     modeled off of Title VII).

19     As discussed above, the only purportedly adverse employment action Thomas alleges for

20     each of these claims is her placement in Focus, which falls well below the applicable standards.

21     "An adverse employment action involves a change in employment conditions that is more than an

22     inconvenience or alteration of one's job responsibilities, such as reducing an employee's workload

23     and pay." *Alonso*, 178 Wash. App. at 746. The Ninth Circuit's decision in *Kortan v. California*

24     *Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), is instructive. There, the Ninth Circuit affirmed

25     that negative performance evaluations which were not widely disseminated did not support a claim

26     for gender discrimination and retaliation under Title VII (which the WLAD closely parallels and

27     relies on). *Id.* at 1113. Critically, the Ninth Circuit concluded that the evaluation was not adverse

28     because the plaintiff "was not demoted, was not stripped of work responsibilities, was not handed

different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit." *Id.* In short, a negative rating, standing alone, was not "discriminatory or retaliatory, or [] such an intolerable act that it would force an employee to quit." *Id.* (citations omitted).

Thomas' claims are even more deficient, as they do not even rely on a formal performance evaluation, but merely the fact that Thomas is in performance counseling. In fact, Thomas alleges that she received a *positive* performance review (Compl. ¶ 122), which underscores that being in Focus is not a formal improvement plan or any guarantee of termination. Thomas' conjecture at what *could* happen in the future, rather than what has happened, is not actionable as a result. *See Wiley*, 2014 WL 953841, at *4. Like the plaintiff in *Kortan*, Thomas has suffered no "harm" from being placed in Focus, which is a private affair that Thomas has chosen to discuss publicly. Just as Thomas' Section 1981 discrimination and retaliation claims must be dismissed for failure to plead an actionable adverse employment action, so too must her WLAD discrimination and retaliation claims.

Thomas' retaliation claim is similarly flawed. As discussed above, Thomas' allegations regarding Focus fail to show that a manager's use of Focus as a development tool would deter a reasonable HR professional from raising complaints of discrimination or retaliation—nor did it deter Thomas from doing so. *See supra* Part A; *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1125 (E.D. Wash. 2013) (noting that the Ninth Circuit applies the framework used to analyze Title VII retaliation claims to the WLAD); *Brooks*, 229 F.3d at 930 (affirming dismissal of Title VII retaliation claim where the alleged adverse employment action was not "sufficiently final" and was subject to change); *Akmal v. Glob. Scholar*, No. C14-1859JLR, 2015 WL 5944306, at *5 (W.D. Wash. Oct. 9, 2015) (dismissing retaliation claim under WLAD for failure to identify an adverse action).

Thomas' allegations are simply not sufficient to support a claim for discrimination or retaliation, and she cannot salvage these defects through amendment.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

12

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone: 212.351.4000

### 2.      Thomas Has Not Pleaded A Claim For Gender Discrimination

Thomas' WLAD claims premised on alleged gender discrimination independently fail because she fails to allege any facts to support an inference that her gender played any part in the alleged wrongful conduct.  Thomas alleges nothing more than a "stray" comment that she contends indicates her gender factored into her treatment, but even this alleged comment is rooted in race. Compl. ¶ 45 (alleging that an unnamed individual said "You don't want to be an angry Black woman").  Further, comments like this, "by non-decisionmakers" and "unrelated to the decision process" are entitled to no weight—particularly if they are the sole conduct relied upon.  *Wiley*, 2014 WL 953841, at *4.  There are *no* other allegations pertaining to Thomas which would allow an inference of gender discrimination.  *See B.L. by & through Landdeck v. Tonasket Sch. Dist.*, 2018 WL 2670031, at *4 (E.D. Wash. June 4, 2018) (granting defendant's motion to dismiss public accommodation and sex discrimination claims under the WLAD where there were no allegations of plaintiff's subjective experience of discrimination); *cf. Moussouris v. Microsoft Corp.*, 2016 WL 4472930, at *2 (W.D. Wash. Mar. 7, 2016) (denying Microsoft's motion to dismiss where plaintiff believed her manager was treating her less favorably because of her gender by giving her inferior work opportunities and making sexist comments, including dismissing her complaints because she had become emotional during a meeting and singling her out for her childcare responsibilities).

As a result of these critical defects, which Thomas cannot cure through amendment, Thomas has no viable claim of discrimination or retaliation under the WLAD and this Motion should be granted.

### V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Thomas' discrimination and retaliation claims under Section 1981 and the WLAD without leave to amend.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

13

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000

Dated:  July 20, 2021.

Respectfully submitted,

*s/ Sheehan Sullivan*
Sheehan Sullivan, WSBA # 33189
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel:  (206) 757-8152
Fax:  (206) 757-7152
Email:  sulls@dwt.com

Jason C. Schwartz*, DC # 465837
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue
Washington, DC 20036-5306
Tel:  (202) 955-8242
Fax:  (202) 530-9522
Email:  JSchwartz@gibsondunn.com

Mylan L. Denerstein*, NY # 2620730
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-3850
Fax:  (212) 351-6350
Email:  MDenerstein@gibsondunn.com

Megan Cooney*, CA # 295174
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel:  (949) 451-4087
Fax:  (949) 475-4778
Email:  MCooney@gibsondunn.com

*\* Pro Hac Vice Pending*

*Attorneys for Defendants Amazon.com, Inc.,*
*Amazon Web Services, Inc., and Keith DurJava*

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

14

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000

CERTIFICATE OF SERVICE

     I hereby certify that on July 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all registered parties in this matter, and that I have mailed by U.S. Postal Service a true copy of this document to all non-registered participants.

Dated:  July 20, 2021             By:   */s/ Carol Huerta*_____

                                Carol Huerta, Legal Assistant

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
CASE NO. 2:21-cv-00661

15

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone:  212.351.4000