The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PEARL THOMAS,<br><br>           Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC., AMAZON WEB SERVICES, INC., and KEITH DURJAVA and JIM HANDORF, in their individual and professional capacities,<br><br>           Defendants. | No. 2:21-cv-00661 (MJP)<br><br>**DEFENDANTS AMAZON.COM, INC.'S, AMAZON WEB SERVICES, INC.'S, KEITH DURJAVA'S AND JIM HANDORF'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT UNDER RULE 12(B)(6)**<br><br>NOTE ON MOTION CALENDAR: FRIDAY, OCTOBER 1, 2021<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 2:21-cv-00661

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT ......................................................................................................................2

 A. Thomas' Discrimination and Retaliation Claims Must Be Dismissed Because She Has Not Suffered an Adverse Action...................................................................2

 1. Thomas' Opposition Fails to Show She Suffered an Adverse Action for Purposes of Her Discrimination Claims ......................................................3

 2. Thomas' Opposition Fails to Show She Suffered an Adverse Action for Purposes of Her Retaliation Claims ............................................................8

 B. Thomas Has Failed to Plead a Claim Against Handorf .........................................10

III. CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................9

*Bastidas v. Good Samaritan Hospital L.P.*,
  2014 WL 6900051 (N.D. Cal. Dec. 8, 2014) ..................................................................... 8, 9

*Bernal v. U.S. Postal Serv.*,
  2020 WL 3453525 (E.D. Cal. June 24, 2020) .....................................................................7

*Bruder v. Chu*,
  953 F. Supp. 2d 234 (D.D.C. 2013) ....................................................................................5

*Burlington Indus., Inc. v. Ellerth*,
  524 U.S. 742 (1998) .............................................................................................................3

*Burlington Northern & Santa Fe Railway Co. v. White*,
  548 U.S. 53 (2006) ..........................................................................................................6, 8

*Campbell v. Hawaii Department of Education*,
  892 F.3d 1005 (9th Cir. 2018) .............................................................................................8

*Chakravarty v. Peterson*,
  2021 WL 1063312 (W.D. Wash. Mar. 19, 2021) .............................................................10

*Churyumov v. Amazon Corporate LLC*,
  2019 WL 6271728 (W.D. Wash. Nov. 25, 2019) ..............................................................11

*Crabbe v. Nakayama*,
  2019 WL 138163 (D. Haw. Jan. 8, 2019) ...........................................................................6

*Delacruz v. Tripler Army Med.*,
  507 F. Supp. 2d 1117 (D. Haw. 2007) ................................................................................3

*Fonseca v. Sysco Food Services of Arizona, Inc.*,
  374 F.3d 840 (9th Cir. 2004) ..............................................................................................4

*Gonzalez v. Nevada Department of Corrections*,
  2015 WL 4711108 (D. Nev. Aug. 6, 2015) .........................................................................5

*Hargrave v. Univ. of Wash.*,
  113 F. Supp. 3d 1085 (W.D. Wash. 2015) .......................................................................12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 2:21-cv-00661

ii

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Heyer v. Governing Bd. of Mount Diablo Unif. Sch. Dist.*,
  2011 WL 2600913 (N.D. Cal. June 30, 2011), *aff'd sub nom.*, 521 F. App'x 599 (9th Cir. 2013) ................................................................................................................................. 9

*In Davis v. Team Elec. Co.*,
  520 F.3d 1080 (9th Cir. 2008) ................................................................................................. 6

*Jinadasa v. Brigham Young University-Hawaii*,
  2015 WL 3407832 (D. Hawaii May 27, 2015) ........................................................................ 5

*Knight v. Brown*,
  797 F. Supp. 2d 1107 (W.D. Wash. 2011), *aff'd*, 485 F. App'x 183 (9th Cir. 2012) ............ 5, 6

*Lucas v. Tempe Union High Sch. Dist.*,
  2019 WL 3083010 (D. Ariz. July 15, 2019) ............................................................................ 4

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................. 4

*Marquez v. Harper Sch. Dist.*,
  2011 WL 2462035 (D. Or. Mar. 24, 2011) .............................................................................. 6

*Mealing v. City of Ridgefield, Wash.*,
  2007 WL 858385 (W.D. Wash. Mar. 19, 2007) ..................................................................... 12

*Morrow v. City of Oakland*,
  2012 WL 2133755 (N.D. Cal. June 12, 2012), *aff'd*, 690 F. App'x 517 (9th Cir. 2017) .......... 7

*Perez v. U.S. Postal Service*,
  76 F. Supp. 3d 1168 (W.D. Wash. 2015) ................................................................................. 9

*Ray v. Henderson*,
  217 F.3d 1234 (9th Cir. 2000) ................................................................................................. 9

*Retherford v. Portland Pub. Sch.*,
  2019 WL 7879880 (D. Or. Dec. 3, 2019), *report and recommendation adopted as modified*,
  2020 WL 168853 (D. Or. Jan. 13, 2020) ................................................................................. 6

*Ruggles v. Cal. Polytechnic State Univ.*,
  797 F.2d 782 (9th Cir. 1986) ................................................................................................... 7

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ................................................................................................... 2

*Southard v. Texas Bd. of Crim. Just.*,
  114 F.3d 539 (5th Cir. 1997) ................................................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sweeney v. Chang*,
   2018 WL 3473962 (C.D. Cal. July 17, 2018) ............................................................................. 4

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................................. 4

**STATUTES**

42 U.S.C. § 1981 ................................................................................................................... 2, 10

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ................................. 2, 5, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 9

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 2:21-cv-00661

iv

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone: 212.351.4000

## I. INTRODUCTION

Plaintiff Pearl Thomas' opposition brief, like her complaint, fails to show that she has adequately pleaded a viable discrimination or retaliation claim. Thomas has not been subjected to an adverse employment action by anyone, nor does she have a legal or factual basis to bring claims against her former manager, Jim Handorf. Thomas' deficient claims cannot be cured because she has been treated fairly every step of the way, and should therefore be dismissed with prejudice.

The glaring flaw in Thomas' complaint continues to be her failure to allege any actionable adverse employment action. Thomas is still employed with Amazon and alleges that she has the exact title she started with: Human Resources Partner. FAC ¶¶ 2, 40. During her roughly 16 months with the company, Thomas has received what she perceived to be a positive performance review and a pay raise. *Id.* ¶¶ 134–35. Thomas' complaint, however, mistakenly contends that her manager's use of the performance development tool, Focus, is an adverse action. In her opposition, Thomas moves away from that position—conceding that Focus is *not* a performance improvement plan (Opp. at 13)—and relies on how Focus creates hypothetical barriers to future transfers or promotions. The opposition argues that Thomas needed "the approval of the very managers who were discriminating and retaliating against her" to be transferred or promoted, but there is no allegation that her manager's approval would be required *because* of Focus. *Id.* at 1; *see* FAC ¶ 100. Regardless, Thomas has not stated that she applied for a transfer to any position she was qualified for and that her manager (or anyone else) wrongfully withheld approval. Thomas alleges only that she wrote a job description for a theoretical "Diversity" position she believed she could assume, without any factual basis to conclude that an actual position ever existed or was filled, that Thomas was qualified or had applied, among a litany of other facts necessary to give Thomas' allegations any credence. Thomas' attempt to manufacture an adverse action in the middle of litigation is absurd and utterly lacks the factual basis required to support a claim.

Thomas' opposition delves into other purported concerns Thomas has related to her workload and duties which are conclusory and contradictory at best. Thomas contends both that she provides critical HR support to 1,500 Amazon employees which she believes is too broad a

scope (FAC ¶ 120), and that she has been relegated to "entry-level" work such as "answering simple questions" (*id.* ¶ 130). These claims cannot be reconciled. Thomas also argues that her work as a "[strategic] HR Business Partner" (*id.* ¶ 129) changed in retaliation for raising complaints, but she does not allege that she ever held the title of HR Business Partner (and therefore could not plausibly have had those duties). Thomas has only experienced one job change during her time with Amazon when she joined the "Builder Experience Team ('BeXT')" in "January 2021"—before any of the allegedly discriminatory conduct occurred. *Id.* ¶¶ 10, 129. Again, Thomas' conclusions and speculation are facially implausible. Stripping away these contradictory and conclusory allegations, all that is left is Thomas' apparent dissatisfaction with the scope of her duties and type of work she performs—neither of which constitutes an adverse action. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (concluding plaintiff's theory was "implausible in the face of contradictory . . . facts alleged in her complaint").

Thomas' claims against Handorf are equally flawed. Thomas primarily complains of Handorf's style as a manager, but her characterizations of his conduct do not match any of the facts alleged. It is not discriminatory or retaliatory for a manager to ask their team member to "focus on prioritizing" and "use[] backbone" to effectively manage their workload, yet these are the types of comments Thomas takes issue with. FAC ¶ 140. Thomas' opposition again points to Thomas' theoretical Diversity Team position, but her suggestion that this role never came to fruition because Handorf "possibly" brought up her status in Focus in providing "feedback" to unnamed individuals is particularly speculative and implausible. Opp. at 15–16. There is nothing in the complaint that plausibly suggests that Handorf was engaged in any wrongful conduct, and certainly not that he "aided and abetted" any discrimination or retaliation. Thomas has no legal bases for including Handorf in this action and all claims against him should be dismissed as well.

## II.   ARGUMENT

### A.   Thomas' Discrimination and Retaliation Claims Must Be Dismissed Because She Has Not Suffered an Adverse Action

Each of Thomas discrimination and retaliation claims—whether arising under Section 1981, Title VII, or the WLAD—fail to plausibly state a claim for relief because Thomas has not

alleged (and cannot allege) that she suffered an adverse employment action. Nothing in Thomas' opposition demonstrates that Thomas has *factual* allegations, to support this necessary element of her discrimination and retaliation claims. Neither her manager's use of Focus as a tool to develop her performance, nor the fact that she did not "assume" a theoretical "Diversity Team" position (FAC ¶ 148), suffice as adverse actions. The assertions that her position was allegedly reduced to administrative job duties while her workload was increased are conclusory and devoid of the requisite specificity, particularly in light of Thomas' role as a salaried HR professional whose volume of work are dictated by the needs of the employees she supports. As a result of these incurable defects, her discrimination and retaliation claims should be dismissed with prejudice.

### 1. Thomas' Opposition Fails to Show She Suffered an Adverse Action for Purposes of Her Discrimination Claims

Under each statutory scheme that Thomas seeks to pursue discrimination claims, she has the burden to plead with specific facts that she suffered "[a] tangible employment action [that] constitutes a *significant change* in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added) (surveying appellate decisions across "race, age, and national origin discrimination, as well as sex discrimination"). None of the supposedly adverse actions raised in the complaint, or in the opposition, rise to this level.

*Focus.* Thomas' opposition appears to agree that Thomas' managers' use of the performance management tool, Focus, has not had any "negative impact on her compensation, hours, [or] status." *Delacruz v. Tripler Army Med.*, 507 F. Supp. 2d 1117, 1123–24 (D. Haw. 2007) (dismissing plaintiff's discrimination claims premised on verbal and written counseling and having an assignment withdrawn). Thomas concedes that Focus is *not* a performance improvement plan and criticizes Defendants for suggesting it is (which they did not). *See* Opp. at 13 ("Defendants also mischaracterize [Focus] as performance counseling or a PIP.").

Given Thomas' opposition's recognition that Focus has not impacted her compensation or fundamental conditions of employment, Thomas alleges that being in Focus impacts her ability to transfer claiming that her managers would supposedly need to approve a future transfer to some

unknown position. *Id.* at 1. This is a fundamentally flawed argument. First, there is nothing in Thomas' complaint specifying that her managers would need to approve her transfer *because* of her Focus status, or that they would need to approve it all. *See generally* FAC. Second, even if she had pleaded such facts, they would not constitute an adverse action, as her own authority demonstrates. For example, unlike in *Sweeney v. Chang*, 2018 WL 3473962 (C.D. Cal. July 17, 2018), Thomas does not allege that her ability to request to transfer was "terminated" by being placed in Focus, nor does she assert that Focus played a role in her annual review. *Id.* at *7. To the contrary, Thomas' allegations are clear that she could request a transfer and that she received what she perceived to be a positive performance review and a pay increase. FAC ¶¶ 100, 134. Importantly, Thomas does not allege that she was denied any transfers for which she applied and was qualified. Her fears about what *could* happen do not give rise to an actionable claim, or even one that this Court would have the ability to redress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (Article III requires "concrete" injury in fact); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211–12 (2021) (finding that damages "based on an asserted risk of future harm" "[are] too speculative to support Article III standing").[1]

***Change in Duties.*** Apparently recognizing the weakness in her Focus-related arguments, Thomas' opposition makes a litany of conclusory and speculative claims that Thomas' duties have changed significantly enough to constitute an adverse action. Thomas, who alleges she has been a "Level 5 Human Resources Partner" during her entire tenure at Amazon (FAC ¶ 40), contends that the nature of her work has shifted from "strategic" and "high-profile initiatives" to "entry-level HR work." Opp. at 11–13. It is impossible to discern what Thomas means when she uses buzzwords like "strategic . . . initiatives" because there are no allegations in the complaint to ground these conclusions in fact or demonstrate how these supposed changes were "forced" upon

---

[1] Thomas also relies on *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840 (9th Cir. 2004) and *Lucas v. Tempe Union High Sch. Dist.*, 2019 WL 3083010, at *7 (D. Ariz. July 15, 2019), but they are inapposite. In *Fonseca*, a warning letter regarding plaintiff's conduct was publicized to *all* employees and plaintiff had specific facts to show that two white employees caused similar or worse damage without being disciplined. 374 F.3d at 848. In *Lucas*, the plaintiff alleged that she was placed on a PIP for misusing her cell phone and socializing too much even though her Hispanic coworkers did the same thing without being disciplined. Thomas has not made any similar allegations here and does not even argue that Focus was a performance improvement plan or disciplinary in nature—because it is not. *See* Opp. at 13.

her. *See id.*; *see also Jinadasa v. Brigham Young University-Hawaii*, 2015 WL 3407832, at *5 (D. Hawaii May 27, 2015) (granting motion to dismiss Title VII claims where plaintiff claimed he experienced a change in "job responsibilities" because that "conclusory assertion" is insufficient without "more factual allegations going to the material effect of [the] alleged actions").

To the contrary, the specific allegations in the complaint contradict these bare conclusions. First, the vaguely defined timing of Thomas' purported shift in duties is implausible. Thomas alleges that she understood she was moving to the BeXT HR group (and would experience changes in her "job functions" as a result) in January 2021 (FAC ¶¶ 10, 48)—before any allegedly discriminatory conduct. Second, Thomas alleges that she continues to provides HR support to 1,500 Amazon employees (FAC ¶ 120), including strategic and complex tasks such as a "Dive and Save" where increased compensation is offered to an employee who is considering an offer from another company (FAC ¶ 153). Finally, it is not believable that Thomas would have such a difficult time completing "entry level" tasks such as "answering simple questions" given her "decades-long career in HR." *Id.* ¶¶ 2, 34, 35, 130, 131. Put simply, Thomas' story is not credible and her self-serving conclusions and contradictory allegations should be disregarded. *Marchioli*, 2017 WL 8186761, at *19 (contradictory allegations are disregarded on motion to dismiss).

The cases Thomas relies on cannot save her pleading. In *Gonzalez v. Nevada Department of Corrections*, 2015 WL 4711108 (D. Nev. Aug. 6, 2015), the court concluded that plaintiff's administrative duty was an adverse action because of the significant restrictions that accompanied that change, such as plaintiff being "prevented from being around the other correctional officers and [] not permitted to go into the prison facility where the other caseworkers worked." *Id.* at *5. Nowhere does Thomas allege that she was prevented from being around her co-workers—only that the nature of her work felt more tactical and less strategic. "Undesirable work assignments are not adverse employment actions." *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 555 (5th Cir. 1997); *see also Bruder v. Chu*, 953 F. Supp. 2d 234, 241 (D.D.C. 2013) (plaintiff's "'personal preference or unhappiness alone is utterly insufficient to establish an adverse action'").

Similarly, unlike *Knight v. Brown*, 797 F. Supp. 2d 1107 (W.D. Wash. 2011), *aff'd*, 485 F. App'x 183 (9th Cir. 2012), where the plaintiff officer was no longer allowed to schedule his team

for work or manage their timesheets, Thomas was not stripped of specific supervisory authority she held previously. *Id*. at 1126 (noting that while plaintiff "may have felt slighted by [the alleged] actions," that alone did not mean that they "materially affected his compensation or the terms, conditions, or privileges of his employment"). Finally, Thomas' reliance on *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), is entirely misplaced in this context as that case addresses retaliation. Additionally, the plaintiff there complained about being reassigned to a job which was "dirtier" and required her to spend "more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id*. at 71. Thomas, on the other hand, claims that the supposed change in her duties made it so she was doing "simple" tasks. FAC ¶ 130 (alleging that her new duties included tasks such as "answering simple questions").

*Scope of Role.* Thomas' argument that she was "supporting 300% the number of employees that was typical" (Opp. at 13), is similarly flawed. Again, there is a clear tension between Thomas' allegation and others that she makes in the complaint. Thomas cannot have it both ways by asserting that "her area of responsibility has been made far too broad" (FAC ¶ 120) even though she contends she primarily "answer[s] simple questions . . . as an 'HR Help Desk'" (*id*. ¶ 130). *See Marchioli*, 2017 WL 8186761, at *19. More critically, however, Thomas has provided no basis to glean whether other similarly situated employees have a so-called "typical" support group, why Thomas' remit is the size that it is, or that the size of the group translates directly to more work. These were the facts present in the cases Thomas relies on, making them inapposite here. *See In Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (plaintiff alleged explicitly that she was assigned more strenuous and dangerous work than her male co-workers); *Marquez v. Harper Sch. Dist.*, 2011 WL 2462035, at *10 (D. Or. Mar. 24, 2011) (same); *Retherford v. Portland Pub. Sch.*, 2019 WL 7879880, at *15 (D. Or. Dec. 3, 2019), *report and recommendation adopted as modified*, 2020 WL 168853 (D. Or. Jan. 13, 2020) (plaintiff assigned additional duties specifically because of her race); *cf. Crabbe v. Nakayama*, 2019 WL 138163, at *2 (D. Haw. Jan. 8, 2019) (dismissing discrimination complaint where plaintiff alleged she had more burdensome work, but failed to plead that she was similarly situated to any comparator).

*Diversity Team Position.* Finally, Thomas' opposition cannot fill in the gaping holes in

her complaint with regard to her alleged failed move to the "Diversity Team." *See* Opp. at 8–9, 15–16. Contrary to Thomas's claim, Defendants' Motion does not "misrepresent" Thomas' allegations on this matter. Opp. at 15. Indeed, it is Thomas's amended complaint that fails to state a claim because, as Thomas well knows, there is not one. Thomas alleges that "in June 2021, [she] learned that she would no longer be considered for a position that she was working with a member of the Diversity Team to create." FAC ¶ 148. She claims she spent "hours with the member of the Diversity Team member [sic] to prepare a job description of the position, and there appeared to be no reason she could not assume the new role." *Id.* Yet, Thomas contends that "[a]fter receiving 'feedback' from Mr. Handorf, the employee that was coordinating with Ms. Thomas to develop a position on the Diversity Team immediately reversed course and no longer pursued securing Ms. Thomas" the position. FAC ¶ 149. This is the full extent of factual detail Thomas provides on this theoretical position. She did not plead any facts regarding whether (1) the unnamed person Thomas was allegedly working with had any authority to create a position, (2) Thomas was qualified for the position given that it was in Diversity and her entire "decades-long career [has been] in HR" (FAC ¶ 2), (3) the position was or would be posted for others to apply for the role, (4) Thomas herself even submitted any type of application or even expressed interest in assuming the role, and (5) the position was in fact ever created and given to someone other than Thomas. Thomas cannot plead these facts because the truth is that there was never an actual position to be filled. It would border on absurdity to conclude that a plaintiff could write a job description in the middle of litigation and salvage her deficient complaint by alleging that her transfer to that hypothetical self-imagined "role" never came to fruition.

Thomas' effort to suggest that this Court should take that leap is strained. Of the four cases she relies on, three have entirely different facts and one supports Defendants. Unlike here, Thomas' authorities involve concrete facts that the positions existed and were open (*Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782 (9th Cir. 1986)), and that the plaintiff applied for them or requested a transfer which was given to someone else for allegedly discriminatory reasons (*Bernal v. U.S. Postal Serv.*, 2020 WL 3453525, at *3 (E.D. Cal. June 24, 2020); *Morrow v. City of Oakland*, 2012 WL 2133755, at *12–13 (N.D. Cal. June 12, 2012), *aff'd*, 690 F. App'x 517 (9th Cir. 2017)).

Thomas' reliance on *Campbell v. Hawaii Department of Education*, 892 F.3d 1005 (9th Cir. 2018), is particularly unhelpful to her. There, the employer had formal rules for how to request a transfer to a different location, yet (like here) the plaintiff provided no evidence of having followed those procedures, and (also like here) there was "no indication that the [employer] had any other policy or practice that would have allowed for consideration" of plaintiff's transfer request. *Id.* at 1013–14. Accordingly, the court held that this rogue transfer bid did not constitute an adverse employment action. *Id.* Just as the Ninth Circuit concluded in *Campbell*, "[t]he failure to give [Thomas] what would essentially have been a gratuitous accommodation was not an adverse employment action." *Id*. at 1014.

Thomas' attempt to manufacture an adverse action through conclusory and speculative allegations should be rejected and her discrimination claims should be dismissed with prejudice.

### 2. Thomas' Opposition Fails to Show She Suffered an Adverse Action for Purposes of Her Retaliation Claims

Thomas' attempts to justify her retaliation claims are similarly unavailing because she has not suffered any actionable adverse action. In assessing a retaliation claim, courts must determine if the alleged adverse action would dissuade "a reasonable worker" from raising a claim. *Burlington N.*, 548 U.S. at 68 (internal citation omitted). As Defendants explained in their motion, this does not require the Court to consider the allegations in a vacuum; to the contrary, this standard accounts for the circumstances of the particular employee. *Id.* at 69. Here, the fact that Thomas is, by her own admission, a seasoned HR professional with experience navigating the performance management process at Amazon and elsewhere, cannot be ignored. FAC ¶¶ 33, 34, 98. Taking that appropriate context into account, Thomas has failed to show that any of the claimed adverse actions would have dissuaded a reasonable employee in Thomas' shoes from pursuing claims.

As for Focus, Thomas' opposition acknowledges it is not a performance improvement plan (Opp. at 13), and, as such, a reasonable HR professional would know that being in Focus is neither a demotion nor a sign of being "pushed out" of the company (FAC ¶ 126). Even the hypothetical hurdle that Focus poses to transferring positions within Amazon is insufficient to meet this lower adverse employment action standard. Contrary to Thomas' arguments, *Bastidas v. Good*

*Samaritan Hospital L.P.*, 2014 WL 6900051 (N.D. Cal. Dec. 8, 2014), illustrates that a threat of action—there, removal from a clinical trial program—"lack[ed] the requisite finality necessary to constitute an adverse employment action." *Id.* at *4; *see also* Mot. at 12. Thomas' status in Focus, and the impact it *could* have on her in the future, are equally speculative and temporary.

Thomas' claims regarding her changes in workload and her failed move to the "Diversity Team" are similarly flawed. Critically, those allegations are far too conclusory and speculative to carry any weight at the pleading stage, which alone dooms Thomas' retaliation claims. *See supra* Part II.A.1; Mot. at 11–13; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements . . . supported by mere conclusory statements" are insufficient to survive a Rule 12(b)(6) motion). Even setting that aside, however, Thomas has been unable to point to any cases supporting her claims. Thomas has not suffered any "abrupt, public, and humiliating" job changes on par with the cases she cites, including *Perez v. U.S. Postal Service*, 76 F. Supp. 3d 1168 (W.D. Wash. 2015), where the plaintiff was relocated to an under-heated storage closet and tasked with demeaning duties such as cleaning his office space. *Id.* at 1185. Thomas also has not alleged that any changes in her workload or the nature of her duties were accompanied with a decrease in pay— to the contrary, she alleges she has received a pay *raise* during her time with Amazon. *Cf. Ray v. Henderson*, 217 F.3d 1234, 1243–44 (9th Cir. 2000) (an adverse action was shown where plaintiff's "supervisors . . . reduced his workload—and his pay—disproportionately to the reductions faced by other employees"). Absent these types of concrete factual allegations, neither the vague alleged changes in her duties nor her wish for a Diversity Team position can support a retaliation claim under any test. *See Heyer v. Governing Bd. of Mount Diablo Unif. Sch. Dist.*, 2011 WL 2600913, at *3 (N.D. Cal. June 30, 2011), *aff'd sub nom.*, 521 F. App'x 599 (9th Cir. 2013) (granting motion to dismiss Title VII retaliation claim where plaintiff claimed denial of transfer was retaliation but had no "facts suggesting [the transfer] request ordinarily would have been granted" or "setting forth [his] qualifications" for the role).

As with her discrimination claims, Thomas has failed to meet her burden to plead sufficient facts to support her retaliation causes of action and they should be dismissed in their entirety.

### B. Thomas Has Failed to Plead a Claim Against Handorf

It is simply not enough that Section 1981 and the WLAD allow a supervisor to be named individually—Thomas must show that she has pleaded *facts* to support the requisite elements of her claims against him for discrimination, retaliation, and aiding and abetting. Rather than do so, Thomas relies on rank speculation and conclusions which are utterly insufficient to justify naming Handorf in this action.

*First*, Handorf cannot have "affirmatively engage[d]" in discrimination or retaliation if Thomas has not suffered an adverse action, which she has not. *See* Mot. at 13–15; *see supra* Part II.A. By her own admission, Thomas continues to be employed in the same role, has received a pay increase, and has not applied for a transfer. FAC ¶¶ 28, 134, 148. Thomas has twice failed to plead that she was subjected to an adverse action by anyone, including Handorf, that would justify a discrimination or retaliation claim. *See id.*

Thomas' opposition attempts to show adverse action by listing actions she believes reflect Handorf's retaliation—"greatly increased workload, requiring her to perform entry-level administrative role, removing her from projects, unjustified performance criticisms, and blocking her from moving into a role on the Diversity Team" (Opp. at 22)—but none of them are supported by the allegations in the complaint. *See supra* Part II.A. Notably, Thomas' complaint does not allege that *Handorf* removed Thomas from projects and instead vaguely refers to "management." FAC ¶ 132. She also does not provide any factual allegations to support her conclusion that *Handorf* increased her workload, gave her unjustified performance criticisms, or blocked her desired move to a supposed Diversity Team position. In fact, the complaint admits to speculating about Handorf's knowledge or involvement in the Diversity Team position, noting that she merely believes he might have given "feedback" which could have affected her ability to transfer. FAC ¶ 149. The opposition is not the proper place to plead factual allegations omitted from the complaint. *Chakravarty v. Peterson*, 2021 WL 1063312, at *4 (W.D. Wash. Mar. 19, 2021) ("These passing references to 'facts' outside the complaint do not support Plaintiff[']s opposition, as the Court's review is limited to the amended complaint.").

For the same reasons, Thomas cannot show that Handorf engaged in any discriminatory

conduct toward her. Thomas' opposition relies on her allegations that Handorf "subjected her to unjustified performance criticisms," including an "undue level of oversight" which "a white male coworker on her team was not being subjected to." Opp. at 21–22. These are conclusions with no facts. As for her performance, Thomas has provided no facts on which to assess the supposedly "baseless" "criticisms" she received or whether a reasonable person would even find it to be criticism in the first instance. Similarly, the "oversight" Thomas complains of is nothing more than standard management. She alleges that Handorf asked for visibility into her "Exact" investigation cases, from which she assumes some mal-intent even though it is far more likely that he wanted to understand their status. FAC ¶ 143. And the only comments the complaint actually attributes to Handorf are that he told Thomas she "needed to 'focus on prioritizing' and should be 'using backbone'"—in reference to Amazon's leadership principle "Have Backbone; Disagree and Commit"—to manage her workload. FAC ¶ 140. Far from discriminatory, these are sensible and unremarkable pieces of guidance from a manager to help his direct report develop the leadership skills that Amazon expects its employees to utilize.

This is far afield from *Churyumov v. Amazon Corporate LLC*, 2019 WL 6271728 (W.D. Wash. Nov. 25, 2019), on which Thomas mistakenly relies.[2] *Churyumov* involved a pro se litigant who had named a host of Amazon employees as individual defendants in his case. In ruling on Amazon's motion to dismiss, the court dismissed the claims against all but one individual defendant, whom the plaintiff had alleged had declined to give him a pay raise and allegedly refused to accommodate his childcare needs. *Id.* at *2. The court found these allegations sufficient, acknowledging that it was appropriate to hold the pro se litigant to a "less stringent standard than formal pleadings drafted by lawyers." *Id.* at *5.

Thomas, on the other hand, is represented by counsel at a well-established plaintiff's law firm that has had two opportunities to state viable discrimination and retaliation claims. Yet, her attempt to plead an adverse employment action is weaker than in *Churyumov*. Unlike the plaintiff there, Thomas does not allege any decrease in pay, instead she acknowledges that her pay has

---

[2] Thomas also makes the baseless and gratuitous contention that *Churyumov* shows Amazon's "*modus operandi*." Opp. at 22. Thomas takes other irrelevant jabs in the opposition, including by prominently reciting her irrelevant (and false) allegation against DurJava.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 2:21-cv-00661

11

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, New York, NY 10166-0193
Telephone: 212.351.4000

*increased* since she started with Amazon in June 2020. FAC ¶ 134. Her unsupported conclusions about shifting duties and criticism simply do not support a claim against Handorf or anyone else.

*Second*, Thomas has not shown that Handorf aided or abetted discrimination or retaliation in violation of the WLAD. Thomas' opposition devotes little time to this argument, which again assumes that her conclusory and speculative allegations that increased workload, changed duties, and allowing Thomas to remain in Focus are sufficient to state an underlying claim. As they are not (*see supra* Part II.A), that alone dooms Thomas' aiding and abetting claim. *See Hargrave v. Univ. of Wash.*, 113 F. Supp. 3d 1085, 1106 (W.D. Wash. 2015) ("Without an underlying act of discrimination, there can be no claim for aiding and abetting discrimination.").

Thomas also fails to state any facts to show that Handorf had knowledge of the alleged discrimination and harassment by DurJava such that there was anything to aid or abet. Rather, Thomas assumes that because DurJava and Handorf both saw flaws in her performance, they must both be discriminating and retaliating against her. *See, e.g.*, FAC ¶¶ 91, 153 (alleging that both DurJava and Handorf levied "baseless criticisms" without detail). The only allegation Thomas makes with regard to Handorf's knowledge is that Thomas "went to" him in March 2021 regarding DurJava and Stephanie Downey. FAC ¶ 91. Notably, however, Thomas does not allege that she told Handorf she felt she was being discriminated against—to the contrary, the only "specific[]" statement she made was to "note[] that Mr. DurJava was targeting her with baseless, overly-aggressive, negative performance feedback." *Id*. There is no allegation that Thomas told Handorf that she felt her race was the reason for this feedback. This is far from sufficient to conclude that Handorf encouraged or facilitated wrongful conduct of any kind. *See Mealing v. City of Ridgefield, Wash.*, 2007 WL 858385, at *2 (W.D. Wash. Mar. 19, 2007) (aiding and abetting requires that "the actor is attempting to or has involved a third person in conduct that would violate the WLAD").

Accordingly, each and every one of Thomas' claims against Handorf should be dismissed.

### III.    CONCLUSION

The Court should grant this Motion and dismiss the defective claims with prejudice.

Dated this 1st day of October, 2021.

Respectfully submitted,

*s/ Sheehan Sullivan*
Sheehan Sullivan, WSBA # 33189
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: (206) 757-8152
Fax: (206) 757-7152
Email: sulls@dwt.com

*s/ Mylan L. Denerstein*
Mylan L. Denerstein*, NY # 2620730
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-3850
Fax: (212) 351-6350
Email: MDenerstein@gibsondunn.com

Jason C. Schwartz*, DC # 465837
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue
Washington, DC 20036-5306
Tel: (202) 955-8242
Fax: (202) 530-9522
Email: JSchwartz@gibsondunn.com

Megan Cooney*, CA # 295174
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel: (949) 451-4087
Fax: (949) 475-4778
Email: MCooney@gibsondunn.com

*\* Admitted Pro Hac Vice*

*Attorneys for Defendants Amazon.com, Inc., Amazon Web Services, Inc., Keith DurJava, and Jim Handorf*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of this DEFENDANTS AMAZON.COM, INC.'S, AMAZON WEB SERVICES, INC.'S, KEITH DURJAVA'S AND JIM HANDORF'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT UNDER RULE 12(B)(6) was served upon designated counsel of record in the manner noted below:

**Jamal N. Whitehead, WSBA #39818**

Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
Phone: (206) 622-8000
Fax: (206) 682-2305
whitehead@sgb-law.com

**Lawrence M. Pearson**
**Jeanne M. Christensen**
**Alfredo J. Pelicci**
**Anthony G. Bizien**
(all pending *pro hac vice* admission)

Wigdor LLP
85 Fifth Avenue
New York, NY 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com
jcrhistensen@wigdorlaw.com
apelicci@wigdorlaw.com
abizien@wigdorlaw.com

*Counsel for Plaintiff*

[ ] Via U.S. Mail
[ ] Via Legal Messenger
[ ] Via Electronic Mail
**[X] Via CM/ECF**

Dated this 1st day of October, 2021.

*s/ Mylan L. Denerstein*
Mylan L. Denerstein*, NY # 2620730
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-3850
Fax: (212) 351-6350
Email: MDenerstein@gibsondunn.com